# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
# THIRD DIVISION

UNITED STATES OF AMERICA,                     Criminal No. 06-92 DWF/AJB

                Plaintiff,

v.                             **REPORT AND RECOMMENDATION**

(1)     HAN CAVAN, and
(2)     KOK LUANGRATH,

                Defendants.

W. Anders Folk, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

Kenneth Bottema, Esq., for defendant Han Cavan; and

Julius A. Nolen, Esq., for defendant Kok Luangrath.

       This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on April 21, 2006, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. Testimony was presented and exhibits were received in regard to defendants' joint Motion to Suppress Evidence [Docket No. 21] and the magistrate judge hereby submits the matter to the District Court on report and recommendation.

       Based upon the file and documents contained therein, along with testimony and exhibits received at hearing, and the memorandum arguments of counsel, the Magistrate Judge makes the following:

**Findings**

Minnesota State Patrol Trooper David Kalinoff was on patrol during nighttime hours on February 28, 2006, on westbound Interstate 94, near the I-694/I-494 interchange, when he observed a Dodge Durango SUV that appeared to be following too closely behind a semi tractor trailer in the center lane. The truck moved into the right lane while the Durango stayed in the center lane and proceeded at a rate of 70 miles per hour, in excess of the posted 65 mile per hour, until catching up to another SUV and following that vehicle at a distance of one-to-two car lengths. Trooper Kalinoff determined the Durango's speed using both radar and speedometer pacing, and the officer further concluded that the vehicle's following distance was not reasonable and prudent under the circumstances such that traffic was generally light and open lanes were available to permit much safer distancing between vehicles. The trooper turned on his lights to initiate a stop, but after proceeding a short distance, and receiving no response from the Durango, the officer activated his siren. At that time the Durango started to move towards the shoulder, but then stopped moving to the shoulder until the officer hit his siren again, at which time the vehicle did pull over and stop on the right shoulder. The stop time was atypically long in light of the usual visibility of patrol car stop lights during nighttime. In addition, the officer observed that the right turn signal of the Durango had not been turned off, and he interpreted that as a possible "indicator" of possible criminal activity.

The stop occurred near the distribution ramp from the I-694 interchange and Trooper Kalinoff was particularly concerned about safety because vehicles were proceeding at freeway speeds to both his left and right. The trooper approached the vehicle on the passenger side in which defendant Cavan was seated. Defendant Luangrath was driving the Durango. The trooper requested and obtained Luangrath's driver's license and also obtained vehicle rental documents (Hearing Exh. No. 5)

2

upon determining that the SUV was rented. Trooper Kalinoff observed that the driver's hands were shaking and he considered that to be somewhat unusual for a traffic stop. Mr. Luangrath was asked to exit the vehicle and when he did not immediately respond the trooper asked the passenger, Mr. Cavan, if his friend spoke English. Cavan said yes and when asked a second time, Luangrath got out of the car. The trooper asked the driver to step out of the vehicle and go back to the squad car so that any information obtained from him could be independently verified by the passenger and because he felt that the squad car was a safer place to talk.

Mr. Luangrath was asked to sit in the back seat. The door was closed somewhat to keep out the noise and cold, but the door was not latched shut. Mr. Luangrath was not placed under arrest. As the trooper examined the vehicle rental agreement, and began to make some computer checks, he engaged in conversation with the defendant. Mr. Luangrath indicated that he did not know exactly where they were going; he did not know his passenger's last name; and he was unclear about the nature of his relationship with his traveling companion. The trooper also learned that Mr. Luangrath was a resident of Ontario, Canada; he was approximately 50 years of age; and the vehicle was rented in Milwaukee, Wisconsin, under his name. Trooper Kalinoff returned to the Durango to check the VIN number and speak with Mr. Cavan who confirmed that Mr. Luangrath was fluent in English. When he went back to his squad car the trooper noticed Cavan digging and reaching back into the back seat area of the SUV. The trooper then got Mr. Luangrath out of the squad car, returned his drivers license and rental agreement to him, and advised him that he was free to leave. The trooper did not write a ticket, but gave the driver a warning for driving too closely. As Luangrath began to exit the squad car the trooper asked if defendant would answer some more questions and he agreed. In their

conversation Mr. Luangrath stated that the defendants had stayed at the Holiday Inn in Milwaukee. The trooper subsequently spoke with Mr. Cavan again and was told that they had stayed at a Days Inn. Shortly thereafter the officer asked Mr. Luangrath whether he had anything illegal, specifically mentioning some common controlled substances, and he also asked if would mind having the vehicle searched. Luangrath appeared to understand the request to search, but would not maintain eye contact when asked about controlled substances. The officer did not draw his sidearm and did not physically threaten the defendant or make promises in regard to being allowed to search. Defendant Luangrath agreed to permit a search and Trooper Kalinoff reasonably believed that consent had been given. The trooper then went to defendant Cavan and asked him to exit the vehicle. When Cavan was asked questions about controlled substances, his reaction was similar to Luangrath's. The trooper did not ask Mr. Cavan for permission to search, and Cavan did not state an objection to the search.

As both defendants stood outside near the squad car, Trooper Kalinoff looked under the right front passenger, concerned that Mr. Cavan might have been hiding a weapon based upon his earlier observation. He immediately noticed a bag of pills which he believed to be Ecstacy. The trooper went back to his squad car, drew his weapon, and ordered the defendants to put their hands on the car. Both defendants were handcuffed and placed in the back of the squad car. The trooper returned to his driver's seat and while he was completing some paperwork Mr. Cavan asked if he could get them a lawyer. The trooper responded that he was not going to question them and he therefore would not be getting them an attorney.

The Durango was transported to the Department of Transportation garage for further search in a safer location. At that site the trooper read the <u>Miranda</u> warning to Mr. Luangrath and they

4

briefly spoke. The trooper did not speak with Mr. Cavan except perhaps to obtain an address and booking information. The traffic stop and subsequent events at the stop scene were video and audio recorded (Hearing Exh. No. 3) on a windshield mounted video camera with microphones mounted on the trooper's uniform and in the back seat of the squad car. Also, officers obtained a video/audio tape recording (Hearing Exh. No. 4)[1] of a non-English conversation (Hearing Exh. No. 2)[2] between the defendants while they were seated in Trooper Mihelick's squad car following their arrests. At the Department of Transportation building in Oakdale numerous photographs were taken of the defendants, the interior and exterior of their vehicle, and seized drugs (Hearing Exh. No. 1). Neither defendant was impaired by drugs or alcohol when they were stopped, and they both understood questions that were asked by Trooper Kalinoff. Defendant Luangrath is a native of Laos who has lived in Canada since 1979. His native language is Lao though he has learned some English from work and television. He also has some hearing loss. Nonetheless, defendant fully understood that he was free to leave when the trooper let him out of the squad car, and he understood that the officer was not making threats or promises to induce cooperation or consent to search.

Based upon the foregoing Findings, the Magistrate Judge makes the following:

**Conclusions**

  **Vehicle Stop and Detention.** The stop of the Dodge Durango SUV driven by defendant Kok Luangrath on February 28, 2006, with defendant Han Cavan as a passenger, was not unlawful. The vehicle stop by Trooper Kalinoff was based upon reasonable suspicion of traffic

---

[1] VHS tape.

[2] English translation transcript of VHS taped conversation.

violations, *i.e.* speeding and following too closely, and was not conducted in violation of the Fourth Amendment.  <u>United States v. Cummins</u>, 920 F.2d 498, 500-01 (8th Cir. 1990).  The officer had sufficient legal basis for the stop, regardless of any other motive he may have entertained.  <u>United States v. Mallari</u>, 334 F.3d 765, 766 (8th Cir. 2003)(citing <u>United States v. Thomas</u>, 93 F.3d 479, 485 (8th Cir. 1996) and <u>Whren v. United States</u>, 116 S.Ct. 1769, 1774 (1996)).  Upon being stopped pursuant to valid traffic stop the defendants were not unlawfully or unnecessarily detained while the trooper conducted routine license and criminal history checks on the driver.  <u>United States v. $404,905.00 in U.S. Currency</u>, 182 F.3d 643, 647 (8th Cir. 1999).  Furthermore, the trooper's routine questions regarding defendants' travel plans and his efforts to engage either of them in conversation about matters such as the purpose of the trip, the destination, where they had stayed, and whether he could search the vehicle, was not unlawful, though defendants were not legally compelled to answer.  <u>Id.</u>, n.2.  Finally, the court concludes that the detention was not unreasonably extended where circumstances and the responses of the defendants gave rise to suspicions of unlawful activity other than the traffic stop itself.  <u>United States v. Barragan</u>, 379 F.3d 524, 529 (8th Cir. 1993).  In this instance the trooper's suspicion of non-traffic criminal activity was reasonably based upon the conflicting answers of the driver and passenger, along with other factors including the unusual length of time it took for the vehicle to stop, leaving the turn signal blinking, and defendant Luangrath's shaking hands and his uncertain responses to questions.  <u>Id.</u>  Suppression of evidence obtained as the result of the vehicle stop, including evidence observed or obtained as a fruit of the vehicle stop and defendants' detention, is not required.

       **Consent Search.**  The warrantless search of the Dodge Durango SUV was lawfully conducted pursuant to voluntary verbal consent by defendant Kok Luangrath, the renter and driver of

the vehicle. Considering the totality of the circumstances, Mr. Luangrath's consent was voluntary and was not a product of duress or coercion, express or implied. U.S. v. Hathcock, 103 F.3d 715, 719 (8th Cir 1997)(citing Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048 (1973)). Defendants argue that the trooper could not have reasonably believed that Mr. Luangrath had given consent to search under circumstances whereby the defendant was not told that he could withhold consent, he was not advised of his Miranda rights, his difficulty speaking English was apparent, and he had hearing difficulties.

Consent to search is voluntary if it results from "an essentially free and unconstrained choice" rather than "duress and coercion." United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998)(quoting United States v. Galvan-Muro, 141 F.3d 904, 907 (8th Cir. 1998)). Voluntariness of consent depends upon the totality of the circumstances, with particular attention to the characteristics of the person giving consent and to the encounter from which the consent arose. Sanchez at 878. Relevant circumstances include the age, intelligence and education of the consenting person; indications of intoxication; whether the person was informed of the right to withhold consent; whether the person understood the various rights of a person involved in a criminal investigation; the length of any detention and questioning; police use of intimidation; reliance upon promises or misrepresentations; whether the person was in custody; whether the encounter was in a public or private place; and whether there was any objection to a search. Id. Defendant Luangrath is an adult and there is no evidence that he suffers from any vulnerabilities arising out of a physical or psychological condition; there is no evidence that Luangrath was under the influence of drugs or alcohol; the events took place on a public highway; there is no evidence of police intimidation, threats, or promises; and there was no expressed objection to a

search. In addition, defendant Luangrath was able to converse with Trooper Kalinoff in English and was not significantly impaired by hearing loss. See United States v. Carrate, 122 F.3d. 666, 670 (8th Cir. 1997). The totality of circumstances support the conclusion that the defendant Luangrath gave voluntary and uncoerced consent to a search of the Dodge Durango. With respect to any objections to the vehicle search by defendant Cavan, the passenger simply has no legitimate expectation of privacy and has no standing to object to the search. United States v. Barragan, 379 F.3d 524, 529. Suppression of physical evidence obtained as a consequence of the consent search is not warranted.

**Statements.** Audio/video recordings of conversations between defendants Cavan and Luangrath while seated in a squad car on February 28, 2006 (Hearing Exh. Nos. 2 and 4), were not unlawfully obtained in violation of defendants' constitutional rights, and suppression of any statements is not required. The conversation statements were voluntary; they were not a result of police interrogation; and they were not product of an unlawful vehicle stop or search.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

### RECOMMENDATION

The Court **hereby recommends** that defendant Han Cavan's and defendant Kok Luangrath's joint Motion to Suppress Evidence be **denied**  [Docket No. 21]. Defendants' joint motion to suppress search and seizure evidence should be denied and defendants' joint motion to suppress statements should be denied.

Dated:     May 10, 2006

                 s/ Arthur J. Boylan
                 Arthur J. Boylan
                 United States Magistrate Judge

   Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before May 25, 2006.

   Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.